IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

|  |  |
|---|---|
| COURTNEY W., <br><br>                Plaintiff, <br><br> vs. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING ALJ DECISION** <br><br> Case No. 1:24-cv-00198-CMR <br><br> Chief Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings (ECF 5). 28 U.S.C. § 636(c). Plaintiff Courtney W. (Plaintiff), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner or Defendant) denying her claim for supplemental social security income (SSI)[1] under Title XVI of the Social Security Act (Act). After careful review of the record (Certified Administrative Record (Tr.), ECF 9), and the parties' briefs: Plaintiff's Motion for Review of Agency Action (Pl. Br.) (ECF 11); Defendant's Response (Def. Br.) (ECF 13); and Plaintiff's Reply (Pl. Rep.) (ECF 14), the court concludes that the Commissioner's decision is supported by substantial evidence and free from reversible error. For the reasons discussed below, the court hereby DENIES Plaintiff's Motion for Review of Agency Action (ECF 11) and AFFIRMS the decision of the Commissioner.

## I.   BACKGROUND

Plaintiff filed for SSI alleging a disability beginning July 1, 2020 (Tr. at 12, 25, 56). Plaintiff filed an application for SSI on February 27, 2022, alleging disability due to autism,

---

[1] Plaintiff's opening brief indicates Plaintiff filed for "Disability Insurance Benefits" (ECF 11 at), but the ALJ's Decision indicates she filed for SSI, which is also proven by the record.

anxiety, attention-deficit/hyperactivity disorder (ADHD), and depression (Tr. at 56, 58).

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (Tr. at 14–31). *See* 20 C.F.R. § 404.1520(a)(4). In a decision dated December 5, 2023, the ALJ determined at step two that Plaintiff had severe impairments of autism spectrum disorder (ASD) and depression/bipolar related disorders (Tr. at 19). The ALJ found that Plaintiff "had been treated for attention deficit/hyperactivity disorder and anxiety/obsessive-compulsive disorders. However, these impairments are non-severe because they do not significantly limit the claimant's ability to perform basic work activities" (*id.*). At step three, the ALJ considered Plaintiff's mental impairments under Listings 12.04, 12.06, and 12.10, finding the criteria not met (*id.* at 20), but found mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself (*id.*), and moderate limitation in concentrating, persisting or maintaining pace (*id.*).

The ALJ next determined Plaintiff had the residual functional capacity (RFC) to perform full range of work at all exertional levels but with the following non-exertional limitations:

> limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multistep tasks, easily resumed after momentary distraction; limited to jobs that do not require more than occasional work related interaction with the public, co-workers and supervisors

(*id.* at 21). At step four, the ALJ found that Plaintiff had no past relevant work (*id.* at 25). Consistent with the vocational expert's testimony, the ALJ found at step five that Plaintiff could perform jobs existing in significant numbers in the national economy, including Auto Detailer, Housekeeping/Cleaner, Mail Sorter, and Laundry Aid, all unskilled work (*id.*). The ALJ therefore concluded that Plaintiff was not disabled and denied SSI benefits (*id.* at 26). The ALJ's decision

became the Commissioner's final decision when the agency's Appeals Council denied her request for review. *See id.* § 404.981. The court has jurisdiction under 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 103, 108. Substantial evidence is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this deferential standard, the court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). If the evidence is susceptible to multiple interpretations, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III.   DISCUSSION

On appeal, Plaintiff asserts the following three points of error with the ALJ's evaluation: (1) at step two and three, the ALJ erred in his evaluation of Plaintiff's mental impairments (Pl. Br. at 10–14); (2) the ALJ erred in his evaluation of the medical opinion evidence (*id*. at 14–22); and (3) at step five, the ALJ erred by finding that Plaintiff could perform work in the national economy (*id*. at 22–25). The Commissioner responds that substantial evidence supports the ALJ's step two and step three analysis (Def. Br. at 7–10), analysis of medical opinions (*id*. at 10–18), and his

finding that Plaintiff could work in several unskilled jobs (*id*. at 18–19). The court addresses each of Plaintiff's contentions in turn.

### A. The ALJ's Step-Two Analysis

It is not expressly clear whether Plaintiff makes a step two challenge. The Opening Brief includes a heading that refers to concerns with step two findings (ECF 11 at 10), but the argument itself does not address any specific concerns with step two. Notwithstanding, to the extent that Plaintiff asserts an argument regarding the ALJ's step-two determination, it fails as a matter of law. In *Allman v. Colvin*, 813 F.3d 1326 (10th Cir. 2016), the Tenth Circuit held that "[a]s long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Id*. at 1330. Here, the ALJ found two other impairments to be severe, namely, autism spectrum disorder and depression/bipolar related disorders (Tr. at 19). Thus, to the extent that Plaintiff raises a step-two argument, it fails as a matter of law.

### B. The ALJ's Step-Three Analysis

At step three, the determination is made "whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity[.]" *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988); 20 C.F.R. §§ 416.920(d), 404.1520a(d). "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Williams*, 844 F.2d at 751. At step three, Plaintiff bears the burden of demonstrating that the claimant's impairments satisfy the criteria of a listed impairment. *See Lax* 489 F.3d at 1084 ("The claimant bears the burden of establishing a prima

facie case of disability at steps one through four.") (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005)).

Even when none of the impairments are determined to be disabling, the ALJ may evaluate the severity of a claimant's mental impairments using the "special technique," which requires rating the degree of functional limitation in four broad areas—(1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself—using a five-point scale of none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)–(d). To prove a presumptively disabling impairment, a claimant must show two marked ratings or one extreme rating. *Id*. § 416.920a(d)(1).

Here, at step three, the ALJ considered Plaintiff's mental impairment under Listings 12.04, 12.06, and 12.10, finding that the criteria were not met (Tr. at 20). The ALJ then used the "special technique" and found mild limitation in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself; and moderate limitation in concentrating, persisting, or maintaining pace (*id*.).

Plaintiff does not argue that the ALJ erred by failing to determine that an impairment was equivalent to a listing. Rather, she argues that the ALJ failed to fully consider Plaintiff's mental impairments when using the "special technique" (*see* Pl. Br. at 10–11; and Pl. Rep. at 2). Plaintiff specifically challenges the ALJ's evaluation that Plaintiff had "mild" limitations regarding her ability to understand, remember, and apply information, and her ability to interact with others (Pl. Br. at 8–9). Plaintiff asserts that the relevant evidence supports greater limitations and that the ALJ improperly "cherry-picked" evidence supporting his findings (*id*.). According to Plaintiff, the relevant evidence indicates higher limitations which would have resulted in a different RFC (Pl. Rep. at 2–3).

As an initial matter, Defendant is correct in highlighting that an ALJ is not required to discuss every impairment or piece of evidence in connection with each functional domain (Def. Br. at 9 (citing *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) ("The ALJ is not required to discuss every piece of evidence."))). Rather, the decision is sufficient so long as it permits the court to follow the ALJ's reasoning and determine that the relevant evidence was considered. *Garland v. Ming Dai*, 593 U.S. 357, 358 (2021) ("Reviewing courts, bound by traditional administrative law principles, must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974))).

Accordingly, the court proceeds by determining whether the ALJ's reasoning can be discerned and whether the relevant evidence was adequately considered.

   i.  *Plaintiff's ability to understand, remember, and apply information.*

In understanding, remembering, or applying information, the ALJ determined that Plaintiff has a mild limitation (Tr. at 20). In support, the ALJ stated:

> On her function report, the claimant did not report difficulty with understanding or with following instructions. (4E). During her consultative examination with Dr. College, the claimant could remember three out of three objects. Her attention and concentration were adequate for the purposes of the examination. She could count backwards by threes. (10F).

(Tr. at 20). Plaintiff provides one paragraph regarding her concerns with the ALJ's analysis of this functional capacity (Pl. Br. at 11–12). In this paragraph, Plaintiff argues that the ALJ's evaluation of this functional limitation is insufficient because he did not consider certain evidence that indicated a more severe limitation (Pl. Br. at 11–12 (citing Tr. at 207, 438, 443, 628–30)). Specifically, Plaintiff argues that the ALJ failed to consider the following: (1) certain portions of Plaintiff's function report and (2) certain portions of Plaintiff's evaluation with Dr. Tanya Colledge, Psy.D (Dr. Colledge) (*id.*).

The ALJ's stated reasons for finding mild limitations clearly show that he considered Plaintiff's function report and Dr. Colledge's evaluation (Tr. at 20). Although the articulation is brief, it sufficiently indicates that the ALJ considered the relevant evidence and, in conjunction with the rest of the opinion, the court can discern the ALJ's reasoning for finding "mild" limitation. For example, the ALJ's RFC includes the following limitations in light of Plaintiff's issues with this functional capacity: limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multistep tasks, easily resumed after momentary distraction (Tr. at 21). Plaintiff, by pointing out other portions of the relevant evidence that allegedly indicate a higher limitation in this area, is not sufficient to support the assertion that the ALJ committed reversible error.

Considering the evidence cited by the ALJ and by Plaintiff, the court finds that the record contains evidence that could support either mild or more significant limitations. But "[t]he ALJ is entitled to resolve such evidentiary conflicts," and the court may not reweigh that determination. *Allman*, 813 F.3d at 1333 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208); *see also Zoltanski*, 372 F.3d at1200 (finding that the court will not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (quoting *Custer County Action Ass'n v. Garvey,* 256 F.3d 1024, 1030 (10th Cir. 2001)). Accordingly, the ALJ's finding of a mild limitation in this functional limitation is supported by substantial evidence, and any argument to the contrary would require impermissible reweighing of the record. *See Hendron*, 767 F.3d at 954.

ii.     *Plaintiff's ability to interact with others.*

In evaluating Plaintiff's ability to interact with others, the ALJ states the following in support of his finding of "mild" limitation: On her function report, the claimant reported some

limitations in social interaction. However, she also reported that she spends time with others in person. (4E). Her treatment providers consistently described her as being cooperative and pleasant (Tr. at 20).

Plaintiff's main contention with this determination is that the ALJ "failed entirely to evaluate or mention Ms. Waller's expressive language delay or any of the extensive treatment notes from her speech therapy sessions" (Pl. Br. at 8–9; Pl. Rep. at 2–4). Plaintiff points to medical evidence to support the assertion that her expressive language disorder was not considered by the ALJ when determining Plaintiff's ability to interact with others (Pl. Br. at 12–14 (citing Tr. at 312, 314, 350–52, 355–56, 371, 373, 408, 413, 458, 448–49, 470, 529, 542, 547–48, 626)); *see also* (Pl. Rep. at 2–4). Plaintiff argues the ALJ's failure to discuss these records "not only in her evaluation of her mental impairments, but in his entire decision is error requiring this case to be reversed and remanded" (Pl. Br. at 13–14). As stated above, however, the ALJ is not required to state every piece of evidence considered; rather, the decision must be sufficient for the court to follow the ALJ's reasoning and determine that the relevant evidence was considered.

Defendant argues that, although the ALJ did not expressly discuss Plaintiff's speech therapy records at step three, the ALJ considered those records in detail in the RFC analysis (Def. Br. at 10 (citing Tr. 21–23; Exs. 9F, 12F, 13F)). In support, Defendant relies on *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), in which the Tenth Circuit held that "an ALJ's findings at other steps of the sequential evaluation process may provide a proper basis for upholding a step-three conclusion that a claimant's impairments do not meet or equal any listed impairment" (Def. Br. at 10). Defendant also cites *Duncan v. Colvin*, 608 Fed. App'x 566, 575–76 (10th Cir. 2015), where the court affirmed the ALJ's step-three determination because the

claimant failed to establish that he satisfied all listing criteria and the ALJ's RFC discussion supplied a sufficient basis for review (ECF 13 at 10).

Accordingly, under *Fischer-Ross* and *Duncan*, the court considers whether the ALJ's discussion of the speech therapy records during his RFC analysis provides a sufficient basis to uphold the ALJ's step-three finding of a mild limitation in Plaintiff's ability to interact with others. The ALJ's RFC discussion demonstrates that he considered the relevant evidence concerning Plaintiff's expressive language disorder (Tr. at 21–22). Specifically, the ALJ noted that Plaintiff showed improvement with treatment, including progress toward initiating and maintaining conversations (Tr. at 21–22 (citing Ex. 12F/32)). The ALJ further observed that, across multiple appointments, Plaintiff consistently presented as cooperative, with a pleasant mood and appropriate affect, and engaged appropriately with providers, including unfamiliar clinicians (*id.* (citing Exs. 12F/15, 13F/3–4, 13F/18, 13F/28, 9F/5)). Treatment notes also reflected that Plaintiff was "enthusiastic," "thoughtful," and "insightful" in her responses during sessions (*id.* (citing Ex. 13F/28)).

This discussion is sufficient to permit the court to follow the ALJ's reasoning and conclude that the ALJ considered the relevant evidence in assessing Plaintiff's ability to interact with others. Although Plaintiff points to evidence suggesting greater limitations, including that she has continued working through speech-related difficulties and even lost employment due to such issues, the ALJ reasonably found that Plaintiff was improving and making progress toward her communication goals (*id.* at 21–22). As previously stated, "[t]he ALJ is entitled to resolve such evidentiary conflicts," and the court may not reweigh that determination. *Allman*, 813 F.3d at 1333 (quoting *Haga*, 482 F.3d at 1208). Accordingly, the court concludes that the ALJ's finding of a mild limitation in interacting with others is supported by substantial evidence.

### C. The ALJ's Evaluation of the Medical Opinions

Plaintiff claims that the ALJ improperly evaluated the opinions of the following three medical professionals: Dr. Tanya Colledge, Psy.D (Dr. Colledge), Dr. Laura Rowley, Ph.D (Dr. Rowley), and Brooke Chambers, LCWS (Ms. Chambers) (ECF 11 at 14–22).

Because Plaintiff applied for benefits after March 27, 2017, the ALJ applied a new set of regulations for evaluating medical evidence, which require the adjudicator to consider the persuasiveness of medical opinion evidence using the factors outlined in the regulations. *See* 20 C.F.R. § 404.1520c(a). While multiple factors are outlined, the ALJ is only required to make findings regarding the supportability and consistency of opinions and prior administrative medical findings with the rest of the record. *See id*. § 404.1520c(b)(2) (supportability and consistency are the most important factors); *id*. § 404.1520c(a), (c)(1)-(2).

"Supportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id*. §§ 404.1520c(c)(1); 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. §§ 404.1520c(c)(2); 416.920c(c)(2).

Furthermore, under the post–March 27, 2017, regulations, an ALJ "will articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905–06 (10th Cir. 2023) (quoting 20 C.F.R. § 404.1520c(b)). The regulations further

clarify that statements by a medical source reflecting judgments about the nature and severity of a claimant's impairments and prognosis are not necessarily "medical opinions." *Id.* (citing 20 C.F.R. § 404.1513(a)(3)). Moreover, statements on issues reserved to the Commissioner— including whether a claimant is disabled or able to work—are considered "neither valuable nor persuasive," and an ALJ is not required to provide any analysis of such evidence. *Id.* (citing 20 C.F.R. § 404.1520b(c)(3)).

For the reasons stated below, the court finds no error in the ALJ's evaluation of the medical opinions in assessing Plaintiff's RFC, and the ALJ adequately articulated his reasoning consistent with the new regulations. The ALJ's findings are therefore supported by substantial evidence.

### i.     Dr. Colledge

In September 2022, Plaintiff underwent a psychological examination with Dr. Colledge (Tr. at 443). Plaintiff asserts that although the ALJ referenced the September 2022 appointment multiple times, the ALJ only provided a summary of the areas of testing in which Plaintiff had success, and he did not provide how persuasive he found Dr. Colledge's opinion (*id*. (citing Tr. at 20–22)). Accordingly, Plaintiff argues that it is unclear how Dr. Colledge's opinion factored into the ALJ's decision, and because Dr. Colledge opined limitations in excess of those found by the ALJ, the case must be reversed (Pl. Br. at 15–16).

The ALJ specifically considered Dr. College's opinion when determining Plaintiff's symptoms (*see* Tr. at 22). The ALJ included an analysis of Dr. College's in his determination of Plaintiff's symptoms (Tr. at 22). The ALJ, however, makes no mention of Dr. College's examination under his section regarding his evaluation of the medical opinions (*see* Tr. at 22–24). As such, Plaintiff is correct in asserting that the ALJ's Decision does not discuss how persuasive he found Dr. College's opinion. As noted, the regulations require an ALJ to articulate how

persuasive he finds each medical opinion. 20 C.F.R. § 404.1520c(b). Although the ALJ did not expressly do so here, the court finds any error harmless.

In *Keyes-Zachary v. Astrue*, the Tenth Circuit addressed a similar issue under the prior regulatory framework, which required ALJs to assign specific weight to medical opinions. 695 F.3d 1156 (10th Cir. 2012). There, the ALJ failed to expressly weigh certain opinions, yet the court held the omission harmless because the RFC was generally consistent with the opinion and there was no reason to believe that further analysis would not have advanced the claimant's disability claim. *Id*. at 1163 ("The ALJ discussed this record but did not expressly weigh it. His RFC, however, is generally consistent with Dr. Reddy's findings. There is no reason to believe that a further analysis or weighing of this opinion could advance Ms. Keyes–Zachary's claim of disability.").

The reasoning in *Keyes-Zachary* applies here. Although Plaintiff highlights portions of Dr. College's opinion suggesting greater limitations, the ALJ's RFC is generally consistent with the opinion. Specifically, the ALJ found that Plaintiff could perform work "limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multistep tasks, easily resumed after momentary distraction; limited to jobs that do not require more than occasional work-related interaction with the public, co-workers, and supervisors" (Tr. at 21.). The court finds that the RFC reflects the substance of Dr. College's findings, and any failure to expressly articulate the opinion's persuasiveness does not affect the outcome and is therefore harmless. *See Keyes-Zachary*, 695 F.3d at 1166 ("Where, as here, we can follow the adjudicator's reasoning in conducting our review . . . merely technical omissions in the ALJ's reasoning do not dictate reversal . . . The more

comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.").

    *ii.*  *Dr. Rowley*

In August 2023, Ms. Waller had an examination with Dr. Rowley. Based on her examination, Dr. Rowley diagnosed Ms. Waller with ASD, ADHD, anxiety, excoriation (skin picking), and depressive disorder (Tr. at 620). Plaintiff cites to various findings of Dr. Rowley regarding Plaintiff's limitations which affect her ability to understand, remember, or apply information; interact with others; and adapt or manage oneself (*see* Pl. Br. at 16–17 (citing Tr. at 620–21; 628–30)).

When considering Dr. Rowley's medical opinion, the ALJ determined that her opinion was unpersuasive (Tr. at 23). In support of this finding, the ALJ mentioned two instances in which he determined that Plaintiff was "less than forthright with Dr. Rowley" (*id.*). The first instance was when Plaintiff told Dr. Rowley that "Her longest stretch of employment was at Staples but she left because there were a lot of company changes and not much communication around them. The unexpected changes because too overwhelming." (*id.* (quoting Ex.19F/7)). According to the ALJ, Plaintiff was not fully forthright because, while she technically worked at Staples from 2017 to 2019, she worked there only part-time (*id.*). The second instance was when Plaintiff told Dr. Rowley that "her last job was a custodian" (Tr. at 24 (quoting Ex. 19F/7)).

While the ALJ's analysis regarding the above instances could have been clearer, the court can sufficiently discern the ALJ's reasoning for finding that these two instances create "inconsistencies between the claimant's subjective statements to Dr. Rowley, and the objective record" (Tr. at 24). When looking at the ALJ's reasoning as a whole, because Plaintiff was not

"fully forthright" in her responses, the record indicates that Plaintiff failed to tell Dr. Rowley about her job in customer service (*id.*).

According to the ALJ, "Exhibit 8D, page 2, shows that the claimant started a new job with Rotech Employee Benefits Corp. in late 2019 . . . and continued that job into July 2020. . . Unlike the Staples job, this was obviously a full-time job" (*id.*). The ALJ further stated that "[p]ursuant to Exhibit 3E, page 5, the claimant's duties at the Rotech job were: 'Call patients/doctor's offices, fill out & fax form to certify equipment, send letters'" (*id.*). Because Dr. Rowley was not informed of Plaintiff's customer service work, including its duration, duties, and functional demands, the ALJ determined that her opinion was formed without consideration of this relevant information. As such, the ALJ ultimately concluded that Dr. Rowley's opinions were unpersuasive because "there are serious inconsistencies between the claimant's subjective statements to Dr. Rowley, and the objective record," resulting in a "great pall" being cast on the entire evaluation (*id.*).

Plaintiff offers explanations for her statements to Dr. Rowley and argues that those statements should not have affected the ALJ's evaluation of Dr. Rowley's opinion to the extent they did (ECF 11 at 17–19). In doing so, however, Plaintiff effectively asks the court to reweigh the evidence and conclude that the ALJ should have found Dr. Rowley's opinion more persuasive. The court declines to do so. Because the court can follow the ALJ's reasoning and finds that he considered the relevant medical evidence, his evaluation of Dr. Rowley's opinion is supported by substantial evidence.

### iii.    LCSW Chambers

Ms. Chambers is a licensed social worker who treated Plaintiff on eleven occasions in 2022 (Tr. at 563). Plaintiff indicates that Ms. Chambers' opinion indicated higher limitations regarding her ability "handling conflicts; initiating or sustaining conversation; understanding and

responding to social cues; responding to requests; keeping social interactions free of excessive irritability; working a full day without needing more than the allotted number of rest periods; adapting to changes; and using reason and judgment to make work-related decisions" (ECF 11 at 20 (citing Tr. 559–63)). Plaintiff also highlights that Ms. Chambers determined that Plaintiff "would miss three days of work per month depending on anxiety levels and would be off-task ten to fifteen percent of the workday" limitations allegedly not considered by the ALJ (*id*. (citing Tr. 561, 564)).

The ALJ considered Ms. Chambers' opinions in Exhibits 15F and 16F and determined that, based on their consistency, the opinions were "minimally persuasive" and, under supportability, they were "not persuasive" (Tr. at 23–24). To support this finding, the ALJ articulated the following determination:

> With the lack of a nexus between the opinions expressed and supporting medical records, and the fact that the author, Brooke Chambers, LSCW, is a non-approved, medical source, the undersigned finds that the lack of supportability is further evidence that these opinions are not persuasive.

(Tr. at 23–24).

As Plaintiff points out, SSR 06-03p states that opinions from medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." 2006 WL 2329939, at *2 (Aug. 9, 2006). SSR 06-03p, further states that when an ALJ considers nonacceptable medical sources "the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Keyes-Zachary*, 695 F.3d at 1164 (quoting SSR 06-03p, 2006 WL 2329939, at *6)).

Accordingly, the ALJ determined there were issues with supportability and consistency when Ms. Chambers' opinions were compared with the record. The ALJ had already cited parts

of the record indicating that Plaintiff was showing progress (*see* Tr. at 21–22). Under these circumstances, the ALJ sufficiently evaluated Ms. Chambers' opinions.

As with Plaintiff's other arguments, she wants the court to find that the ALJ should have given more weight to Ms. Chambers' opinions, yet the ALJ sufficiently evaluated her opinions and found that they lacked supportability. The court finds no error with the ALJ's evaluation of Ms. Chambers' opinion, as the decision permits the court to follow the ALJ's reasoning. Moreover, regarding Ms. Chambers' determinations that Plaintiff would miss three days of work and would be off-task ten to fifteen percent of the workday, these are statements on issues reserved to the ALJ and are "neither valuable nor persuasive." *Staheli*, 84 F.4th at 905–06 (quoting 20 C.F.R. § 404.1520c(c)(3)). Therefore, the ALJ was not required to provide any analysis of such evidence. *Id.*

### D. The ALJ's Step-Five Analysis

At step five, the burden shifts to the ALJ to determine whether the claimant has the RFC "to perform other work in the national economy in view of his age, education, and work experience." *Williams*, 844 F.2d at 751 (quoting *Bowen v. Yuckert,* 107 S.Ct. 2287, 2291 (1987)). This burden can be met in one of two ways: 1) by the testimony of a vocational expert; or 2) by reference to the grids. *Daniels v. Apfel*, 154 F. 3d 1129, 1132 (10th Cir. 1998).

In this case, the ALJ used a vocational expert to determine whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. at 25). Consistent with the vocational expert's testimony, the ALJ found at step 5 that Plaintiff could perform jobs existing in significant numbers in the national economy, including Auto Detailer, Housekeeping/Cleaner, Mail Sorter, and Laundry Aid, all unskilled work (*id.*).

Plaintiff argues that three of the listed jobs "are incompatible with Ms. Waller's sensory issues stemming from her diagnosis of ASD, which the ALJ found to be a severe impairment." (Pl. Br. at 23). Plaintiff then provides evidence which she determines is relevant to showing her "sensory issues with textures, sounds, and smells" (*id*. (citing Tr. at 419, 439, 626)). Plaintiff claims that despite the "prevalence in the record and the fact that the ALJ found that ASD was a severe impairment," he did not discuss Plaintiff's sensory difficulties. (Pl. Br. at 23).

At step five, the focus is not on whether the ALJ properly accounted for Plaintiff's impairments or symptoms in formulating the RFC. Rather, the inquiry is limited to whether, given the RFC, there are jobs existing in significant numbers that Plaintiff can perform. To the extent Plaintiff argues that her sensory issues were not adequately considered, that challenge goes to the ALJ's evaluation of her impairments and resulting limitations at steps two through four. Plaintiff has the burden at those earlier steps to establish that her sensory issues resulted in functional limitations that should have been incorporated into the RFC. *See Lax*, 489 F.3d at 1084 (holding that the claimant bears the burden through step four of the sequential evaluation).

Once the claimant proves an inability to perform her past work, the burden shifts to the Commissioner to show that other work is available in the national economy that the claimant can perform. *Williams*, 844 F.2d at 751. Plaintiff cannot now raise this argument at step five by asserting that the identified jobs are incompatible with limitations that were not included in the RFC. Because the RFC did not include restrictions related to sensory issues, the vocational expert's testimony properly reflected the limitations the ALJ found supported by the record. Accordingly, the court finds no error in the ALJ's step-five determination.

## IV.   CONCLUSION AND ORDER

When viewed in its entirety, the record contains substantial evidence to support the ALJ's finding that Plaintiff was not disabled. Thus, the court concludes that the ALJ's decision in this matter is supported by substantial evidence in the record and that the correct legal standards were applied. Because the ALJ's decision is supported by substantial evidence and legally sound, the Commissioner's decision is AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 24 March 2026.

Chief Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah